From Northampton.
The defendants put in their answers, Harwood Jones insisting that the whole rents and profits belonged to him, and Hyder A. Davie and wife insisting that one moiety thereof belonged to them. The case was sent to this Court upon the bill and answers, for the opinion of the judges. *Page 325 
By the will of Harwood Jones the elder, his son Harwood Jones was tenant for life, with a clear remainder to his other son, John Jones. But John Jones, by deed of bargain and sale, conveyed the said lands to his brother Harwood in fee, "Provided, nevertheless, and upon this express condition, that if the said Harwood Jones should depart this life without a legitimate child or children, then in that case the said lands, etc., are to revert to and become the property of the said John Jones, his heirs and assigns, forever, in as full and ample a manner, to all intents and purposes, as if this present indenture had never been made." If this had been a feoffment or other common-law conveyance, the feoffee would have taken a fee simple on condition. Co. Lit., 203, a; 204, 331, 371, 372. And on his dying without child or children, the feoffor might have entered and been seized of his former estate. Co. Lit., 325, 202, a.
A condition may either confirm or defeat a fee simple. Co. Lit., 207, a.
But this conveyance was a bargain and sale to operate by the statute of uses (2 Bl. Com., 338); and on such conveyance a fee may be limited on a fee, provided the contingency on which it is so limited is not too remote. The Duke of Norfolk's case
arose on a deed, and was a springing trust after an estate tail in a term. An estate tail in a term gives the whole interest therein, because it cannot be docked by fine or recovery, and so tends evidently to perpetuity. Fearne's Essay on Remainders, etc., 5, 349, 414. A common recovery suffered by tenant in tail barred all remainders and reversions on account of the supposed recompense. 2 Bl. Com., 360. But conditions, (479) conditional limitations, shifting uses and trusts, resulting uses and trusts, etc., which were only to have operation after the termination of a fee simple, being of no value in the eye of the law, no recompense was awarded them, and therefore they were not bound on that ground; but on the absurd notion that the recoverer was in possession of the estate tail, which, in contemplation of law, will ever continue to subsist. 2 Bl. Com., 360; Fearne's Essay, 67, 72 (Powell's edition). But a recovery by tenant in fee simple did not bar them; for he, having the whole estate, would be entitled to the whole recompense, and *Page 326 
there being no previous estate tail, there was no room for the notion of its continuing to subsist. This is the foundation of the rule limiting them to take effect within a life in being and twenty-one years after.
In the case before the Court the bargainee was tenant in fee simple, and no recovery has or could have been suffered. it is therefore submitted that the heirs of John Jones are clearly entitled to the lands, the profits of which are in dispute in this case.
The second question is, Who are the heirs of John Jones entitled to these lands? At the death of John Jones, his son was his sole heir; but at the death of Harwood Jones, the bargainee, in 1798, when the reversionary interest of the said John fell into possession, his son and his daughter were equally entitled;* and the question is, whether the son, who was heir at the death of his father John, or the son and daughter, who were the heirs at law at the death of Harwood, the bargainee, and the falling into possession of the reversionary interest, are to take.
(480) Whoever claims a fee simple by descent from one who was first purchaser of the remainder or reversion expectant on a freehold estate must make himself heir to such purchaser at the time when such remainder or reversion falls into possession (Co. Lit., 116, 7, 146, 15 a; 3 Co., 42; Fearne, 449, 534; 2 Will., 29); and although the particular reason given in the case in Willson, against the plaintiff, was that she was not of the blood of the first purchaser, yet that would not govern the case from Lord Coke, as the father and the sister of the whole blood were of the blood of the first purchaser. It must therefore be the general one assigned by Fearne, "that she was not heir at the time of the contingency happening and the estate falling into possession."
In formedon in descender, the Court stating the gift to the first donee, expressly avers a descent from him to A, his son and heir, then to B, his son and heir, and then to the defendant, his son and heir. Co. Ent., 317, 320, etc. But in formedon in the remainder and reverter the Court only avers the happening of the contingency on which the lands were to go over or revert; and that on its happening the lands ought to go over or revert to the defendant, who now claims as cousin and heir of the first purchaser or donor; and only under a scilicet shows how he is cousin and heir. Rast. Ent., 375-6; Cok. Ent., *Page 327 
329, 338, 340. What is laid under a videlicet is mere form, not traversable by the defendant; nor is the plaintiff obliged to prove it, but may support his general allegation of being cousin and heir by proof of any other facts. Hob., 105-6. As the accuracy and scrupulous precision of ancient pleading, and the necessity that a party was under of averring everything material to his claim, are well known, and as the demandant in remainder or reversion only averred that at the time the contingency happened and the lands were to come into possession, he was heir to the first purchaser or donor, these precedents appear to be strong evidence that he who was heir at the time of the contingency happening and the lands (481) falling into possession, was to take, and not he that was heir at the death of the first purchaser or donor, or those claiming under him. The same doctrine is strongly laid down byBrampton, C. J., and Berkley, J., in Cro. Car., 411, and agreed to by Jones and Croke, JJ., although they differed from the others in the determination of that case upon the custom. But Croke reports himself and Jones as having said: "If lands vest in an heir by reason of a contingency, although another heir more near comes in esse, it shall never be divested; and he who will after claim ought to claim from him in whom the estate vested." The two cases which they cite in support of this doctrine are both stated in Co. 65, a, and show that by the term"vest" they meant vesting in possession on the happening of the contingency. Indeed, they could mean nothing else, for an interest, while it depends on a contingency, is not a vested interest, and is therefore called contingent. So that this doctrine has no bearing on the case now before the Court. Both cases are, however, well explained, and the dictum itself shown not to be law, in 1 Co., 69 a; Cro. Car., 87; Hob., 3; 3 Co., 61, b.
The interest of the first purchaser of a remainder in fee, or the donor of a reverter in fee, is to him and his heirs forever; and on his death, whatever interest vests in his heir is to him and his heirs forever. But the cases already cited show that this interest, although vesting in the heir of the first purchaser or donor and his heirs, is subject to be divested by any subsequent event which makes them not heirs to the first purchaser or donor at the time when the reversion falls in. It is true that none of these cases show that the estate may, by a subsequent event, be divested out of an heir of the first purchaser or donor, in whom it has once vested; but only that it shall not descent from such heir to his heirs, which must be owing to the law of descent's never having been changed in England since we have any reports of cases decided there; and, therefore, if the *Page 328 
(482) remainder or reversion once vested in a person as heir of the first purchaser or donor, he continued to be heir to the first purchaser or donor at the falling in of the reversion, if he so long lived; but such heir does not take an interest to himself and another to his heirs; and if the interest which he takes to his heirs is liable to be divested, and has been divested by subsequent events, making his heirs not heirs to the first purchaser or donor at the time when the reversion or remainder fell into possession, why should not his interest be liable to be divested and actually be divested by a subsequent event (the passing of a public and general law) making him not heir to the donor or first purchaser at the time when the reversion or remainder fell into possession?
It is impossible to ascertain when this rule of law was first established; but it was probably after that which, in opposition to the principles of both natural and feudal law, excluded the children of different venters from inheriting from one another the lands of their common ancestor; and one beneficial consequence, if not a cause of it, is the avoiding of some extreme hardships under the latter rule: ex gratia, if John Jones had had two sons by different venters, and no other relations whatever, and died, then the son by the first venter had died, and then Harwood Jones, the bargainee, had died, living the son by the second venter, by this rule the son by the second venter would inherit; whereas, if the reversion had vested in the son by the first venter, that then must have continued in him and his heirs, and could not be divested by any subsequent event making him or his heirs not heirs to the first donor at the time of the reversion falling in, the son by the second venter could not, at common law, inherit, but the lands would escheat. InCunningham v. Moody (1 Ves., 174) Lord Hardwicke says, in a similar case: "The Court never is sorry to see this happen between brothers and sisters of the half blood by the (483) same father; it both answers the intention and rule of nature." It is also in strict conformity to the great principles of inheritance: it admits all the blood of the first purchaser, and none but the blood of the first purchaser.
It is common sense in law for lands to vest in one sub modo only, so as to be divested by a subsequent event and vested in another. It occurs exinstitutione legis in every instance where, on the death of a tenant in fee or in tail, his lands descend to his daughter, brother, uncle, etc., and afterwards a son is born or other nearer heir; the after-born issue shall enter upon the sister, brother, uncle, etc., and divest the estate which he or she took by descent. Co. Lit., 11, b; Com. Dig. Descent, ch. 2, *Page 329 et multis aliis. So it occurs often ex provisione hominis, as where lands are settled or devised to the use of the husband and wife for life, remainder to such one or more of their children as they shall appoint; and in default of such appointment, to all their children as tenants in common: there, on the birth of one child, the remainder vests solely in it; but on the birth of a second child, one moiety of the remainder is divested out of the first child and vested in the second, and so on toties quoties; and if the father and mother make an appointment, then the whole remainder is divested out of the children as tenants in common, and vested according to the appointment. Cunningham v. Moody, 1 Ves., 174; 4 Term, 30. Thus, if on the death of John Jones an interest vested in his son Harwood, one moiety of that interest was liable to be divested, and was actually divested by the act of Assembly of 1795, and each of the defendants is entitled to a moiety of the lands, and of course to a moiety of the profits.
But it is contended that on the death of John Jones no interest whatever descended to or vested in his son Harwood. Wherever the vesting of an estate, either in interest or in possession, depends on a contingency which, by possibility, may never happen, it is called a possibility; and the old authorities did not perhaps distinguish between them. (484) But the law for a number of years past has distinguished and made a wide difference between them. The first, where the vesting in interest depends on a contingency which, by possibility, may never happen, is called a bare or naked possibility, and has no existence until the event happens. It is a mere hope or expectation, such as an heir apparent has during the life of his father, and of course cannot be disposed of. The second, where the vesting in possession only depends on a contingency which, by possibility, may never happen, is called a possibility, coupled with an interest; or there is a present existence in interest, although the taking effect in possession depends on a future event (1 H. Bl., 537); and it has been decided by degrees that these last are descendible, releasable, assignable and devisable. 3 Term, 93, 95. It is admitted that John Jones, the donor, had a possibility coupled with an interest: it was descendible to his heirs, and he might have disposed of it from his heirs, either by release, assignment or devise. But on his death his son took no such interest. It was not descendible from him to his heirs. If he had died in the lifetime of his uncle, his father's heirs and not his would have been entitled at the death of his uncle, as has been shown already. He could not devise it (3 Lev., 427), nor could he assign it; for devisable *Page 330 
and assignable are convertible terms, a devise being only an assignment in contemplation of death. The son of John had not, therefore, during the life of his uncle, a possibility coupled with an interest; but only a bare, naked possibility, a mere hope or expectation that he would be heir to his father at the death of his uncle. The Legislature have disappointed this expectation by the act of 1795, declaring his sister should inherit equally with himself; so that these lands and the profits thereof must be equally divided between them.
No inconvenience, even at the common law, could have (485) resulted from considering such possibility as in abeyance or suspension, on the death of the donor or first purchaser. The uncle was tenant in fee simple, constituted a complete feudal tenant, was dispunishable of waste, could pray in aid of no remainderman or reversioner, could even bring or defend a writ of right; and the power of alienation could only be restrained during the period which lapsed between the death of John Jones and his brother Harwood Jones.
* By the act of 1795, sisters were admitted to inherit lands equally with the brothers, to hold with the brothers as tenants in common. — REPORTER.
For the reasons given by the counsel in the argument of this case on behalf of Davie and wife, we are of opinion that they are entitled to a moiety of the rents and profits received by the guardian. Judgment accordingly.
Cited: Gentry v. Wagstaff, 14 N.C. 278; Lawrence v. Pitt, 46 N.C. 348.